JOSEPH A. L. BLEK, Appellant, Respondent, v. FRANK WILSON, as President, or WILLIAM BECK, as Treasurer, of Local Union No. 3 of the International Brotherhood of Electrical Workers, Respondent, Appellant.*

First Department, February 17, 1933.

* Modfg. and affg. 145 Misc. 373; revd., 262 N. Y. 253.

*Maximillian L. Blek,* for the plaintiff.

*Harold Stern* of counsel [*Walsh & Stern,* attorneys], for the defendant.

MARTIN, J.   The plaintiff in May, 1929, was a member in good standing of the defendant Local Union No. 3, International Brotherhood of Electrical Workers.   At the same time, he was a member in good standing of Local Union No. 52, International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of United States and Canada.

On May 8, 1929, directors of the New York Life Insurance Company were being inducted into office.   The ceremonies in connection therewith were held in the company's building at Madison avenue and Twenty-sixth street, New York city.   The plaintiff was assistant recordist of a crew of three men who were all members of the International Alliance, employed by Pathe Exchange, Inc., to take sound pictures of the proceedings for the Pathe News Reels.

The defendant Local Union No. 3, International Brotherhood of Electrical Workers, contends that the plaintiff, by doing the work of connecting up the picture machines and running a wire from the machine to the battery, with others who were not members of the defendant union, violated subdivisions 4 and 11 of the general laws contained in defendant's by-laws, " in that he both gave away the jurisdiction of the defendant union, and worked with non-union men.   This constituted a violation of the working rules."

On March 31, 1930, the executive board of the defendant local union, purporting to act on the alleged charges which it claimed had been preferred against the plaintiff by one William McCron, based upon the work performed by plaintiff on the above occasion, imposed a fine on the plaintiff of $200 and suspended him indefinitely.

This action was commenced on August 5, 1931, to have the assessment refunded and the suspension vacated; to have plaintiff reinstated to all the rights and privileges of a member in good standing of the local union, and to recover damages suffered by plaintiff as a result of his suspension.

After a trial at Special Term the court rendered a decision setting aside the assessment and the indefinite suspension and adjudging plaintiff to be entitled to all the rights and privileges of a member in good standing as of January 1, 1930.   In awarding judgment to plaintiff, the court at Special Term refused to allow damages,

stating: " As to the demand for damages, the evidence on the probability of plaintiff obtaining employment during the period of his suspension is too speculative to warrant any award."

The plaintiff appeals from the judgment only in so far as it fails to award him damages for loss of wages, and the costs and disbursements of this action.

The defendant appeals from the judgment in so far as it decrees that the assessment of the plaintiff in the sum of $200, and his indefinite suspension from the local union by its executive board on March 31, 1930, be declared null and void and of no legal effect, and directs that the defendant forthwith issue to plaintiff a working card for the current quarter of 1932, and from that part which adjudges that so long as plaintiff complies with the provisions of the by-laws and rules of the union it is jointly and severally enjoined from in any manner interfering with the plaintiff in the exercise of his rights as a member in good standing of the local union, and from issuing any notice or communication in form or in substance that plaintiff is ineligible for employment as a union electrical worker and from in any way preventing the plaintiff from obtaining employment.

The contention of the defendant is that the court had no right or power to interfere with the action of the union.

The answer to that contention will be found in *Polin* v. *Kaplan* (257 N. Y. 277). The court there said: " This is not to say, however, that a court will decline to interfere, if an expulsion has been decreed for acts not constituting violations of the constitution and by-laws, and not made expellable offenses thereby, either by terms expressed or implied. In such an instance, the expulsion is not within the power conferred by the contract. Accordingly, the proceedings will be set aside and the associate restored to membership."

The plaintiff excepted to the court's refusal to find that he was entitled to damages for loss of wages, and to the costs and disbursements of the action, and contends that his uncontradicted testimony which is not in conflict with any testimony or evidence offered by defendant, warranted an award for loss of wages amounting to the sum of $3,960. It is argued by plaintiff that in view of the court's holding that plaintiff was illegally suspended, it was error not to award the costs and disbursements of this action to plaintiff. The plaintiff says that the record clearly justified the determination made by the court, except in so far as plaintiff was refused damages and costs.

The Court of Appeals, in *Polin* v. *Kaplan* (*supra*), said: " It has been found that the plaintiff Polin, as a result of the action of the

union in expelling him, has suffered a loss of wages amounting in the aggregate to $1,955. He is entitled to a recovery of this amount. It has also been found that he has incurred expenses for legal services amounting to $5,000. The services involved are those performed in this very action. No recovery may be had therefor."

The facts leading to the fine and suspension clearly demonstrate that there was no reason for any such action by the executive board of the union, and that the alleged charges were a mere pretext to discipline the plaintiff. This was forcibly indicated by the fact that McCron, the witness relied upon by the union to substantiate the alleged violation of the by-laws of the union by the plaintiff, was unable when on the witness stand to prove any violation. He testified. " Q. * * * What did Joe Blek do that you saw him do, starting here and going there, or starting there and going here? A. I didn't personally see him do anything."

This witness further testified that he did not file a complaint in writing with the business agent of the local union, but that he made a written report to the local, which report was not produced. The witnesses for defendant testified they had never seen any such report.

The plaintiff appears to have been willing to meet any alleged charges, and to that end sought out the officers and insisted upon a hearing. On December 16, 1929, he was notified that there were some serious charges then in possession of the executive board concerning his affairs. He appeared before the executive board on March 10, 1930, and demanded a hearing, but he was refused a hearing and was told to return in two weeks. He was subsequently notified to appear on March 31, 1930. On that day he wired to defendant that he was touring New England for three or four weeks and could not appear. On March 31, 1930, the executive board held a trial at which McCron appeared and testified as to the complaint which he had previously made against the plaintiff. Plaintiff was not present at this hearing, nor did anybody appear for or testify in his behalf, nevertheless he was fined $200 and suspended indefinitely.

Due to his suspension from the local union, the plaintiff was without employment for a period of sixty weeks. This was due to the failure of the defendant union to furnish him with a working card. That it was necessary for plaintiff to possess such a card in order to obtain employment was admitted by the witness Frank Wilson, president of the defendant local union, on examination before trial. He testified that, " plaintiff's failure to have in his possession a working card from Local Union No. 3 was enough to prevent his getting employment as a union electrician within the territory covered by Local No. 3."

The following concession was also made on the examination before trial: " That the union rate of wages of a member of this electrical union was and is $66 per week for five days, and eight hours per day."

The plaintiff testified that he sought employment in the city of New York as a union electrician; that he did not succeed because he did not have a card and that he was told that he would have to get an O. K. from the office of the local union, for without a card he could not get work.

In view of his failure to obtain employment, plaintiff contends that he established a clear right to an award of $3,960 for wages lost; that he is entitled to costs and disbursements of the action under the Civil Practice Act, section 1477, and that the judgment should be modified by awarding him the above damages, with interest from April 19, 1932, the date of the trial, with the costs.

Although not guilty of any violation of the by-laws or any infraction of the rules of the union, the plaintiff has been fined and suspended indefinitely. No charges in writing were ever made against him. The proceeding was an attempt unlawfully to suspend him from membership in the union.

We are of the opinion that the plaintiff is not only entitled to the relief granted by the court, but is also entitled to recover damages amounting to $3,960, with interest from April 19, 1932, for the loss he sustained due to his inability to obtain work because he had been wrongfully suspended from the union, together with the costs of the action to be taxed.

The judgment is modified to the extent indicated, and, as so modified, affirmed, with costs to the plaintiff, appellant.

FINCH, P. J., O'MALLEY, SHERMAN and TOWNLEY, JJ., concur.

Judgment modified to the extent indicated in opinion and as so modified affirmed, with costs to the plaintiff, appellant. Settle order on notice reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.